**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **TRACYE RENEE DOCKETT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:08CV1444-DJS |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

### ORDER

Now before the Court is defendant Michael J. Astrue, Commissioner of Social Security's motion for summary judgment [Doc. #15]. Pro se plaintiff Tracye Renee Dockett has not opposed or otherwise responded to defendant's motion, and the time to do so has expired. Accordingly, defendant's motion is ready for disposition.

**Plaintiff's Amended Complaint**

On September 22, 2008, plaintiff filed the instant lawsuit against defendant, and on November 18, 2008, plaintiff filed an amended complaint. Plaintiff alleges termination of her employment, disparate treatment, and harassment because of her race and color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Specifically, plaintiff alleges that her desk was situated next to her supervisor Dianna Lee Ferbet's desk, and that Ferbet would walk past plaintiff's desk and

clear her throat, which intimidated plaintiff. Plaintiff further alleges that the spot where her desk was located was "cold," "meaning tension in the air," which caused her "a lot of physical stress." Doc. #7, p. 5. Finally, plaintiff alleges that a co-worker, Marianne G., who is a white female, performed poorly but was allowed to continue to work, whereas plaintiff was terminated.

### Standard of Review

As an initial matter, the Court notes that plaintiff is a pro se litigant, and as such her pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Nevertheless, plaintiff must comply with substantive and procedural law. See Am. Inmate Paralegal Ass'n v. Cline, 859 F.2d 59, 61 (8th Cir. 1988).

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or

allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

In ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Consequently, in order to withstand a motion for summary judgment, evidence submitted by a non-movant must contain specific facts, and general statements will not be supplemented by a court's assumptions.

> It will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is).

Id. at 889. Further, in view of plaintiffs' failure to assert any opposition to defendant's summary judgment motion, the Court notes that it is "'not required to speculate on which portion of the

record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)).

**Facts**

For purposes of this motion, the Court finds that the following facts are not in dispute, or have not been specifically controverted pursuant to E.D.Mo. L.R. 7-4.01(E).[1] On July 12, 2004, plaintiff began work as a Contact Representative ("TSR") in the St. Louis, Missouri, Teleservice Center of the Social Security Administration. Her hiring occurred through the Federal Career Intern Program ("FCIP"), and was effective on July 11, 2004.

Plaintiff's job appointment was subject to satisfactory completion of a two-year trial period. The trial period provides agencies with an opportunity to observe an employee's actual performance on the job to determine the fitness of the employee for the position and is explained to the prospective employee on the government's Standard Form 50 when he or she receives the appointment to a position.

On July 12, 2004, Plaintiff signed a "Statement of Understanding Regarding the Conditions of Employment for Federal

---

[1]"All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 7-4.01(E).

Career Intern Program Contact Representatives (TSR)," which outlined the conditions of employment for a TSR under the FCIP. The Statement of Understanding described the training program, and that successful completion of the program was required for permanent employment. The Statement of Understanding also outlined how the termination process for unsuccessful employees varied depending on prior Federal service.

Plaintiff received classroom training from July 13, 2004, through September 29, 2004, in the essential duties of the TSR position. After the completion of the classroom training, plaintiff received eight months of mentoring and review of her work. The expectation is for TSR trainees eventually to work independently and accurately without a mentor.

Ferbet, a white female, was plaintiff's immediate supervisor from July 2004 through March 2005, and again from approximately June 6, 2005, through June 24, 2005. In October 2004, plaintiff asked Ferbet to move to another desk because she was cold. Ferbet suggested that plaintiff try sitting at other desks, and plaintiff selected a desk that currently did not have a computer. Plaintiff agreed to wait for a computer to arrive, which occurred in December 2004. Ferbet subsequently forgot about plaintiff's request, and plaintiff did not move desks.

Plaintiff's performance difficulties started during the mentoring period. That is, a few months into the job, plaintiff was informed by Ferbet that Ferbet found plaintiff's performance to

5

be deficient.  From December 9, 2004, through January 4, 2005, plaintiff was allowed to answer telephone calls without a mentor, but plaintiff's calls had to be interrupted or assisted by other workers so often that plaintiff was reassigned a mentor.

From January 5, 2005, through her termination, plaintiff was not allowed to answer calls independently.  Jermaine Mitchell, an African-American male, mentored plaintiff, and was her primary mentor from March 1, 2005, through her termination in June 2005. Catherine Foster Koko, a white female, served as plaintiff's immediate supervisor from March 6, 2005, through June 6, 2005, while Ferbet was on detail.  On a number of occasions, Koko advised plaintiff she needed to work independently and accurately to succeed as a TSR.  Linda Bigogno, a white female, was plaintiff's second-level supervisor, and also supervised Ferbet and Koko.  In a meeting in May 2005, Bigogno told plaintiff that her performance was not sufficient, and that she risked termination if it did not improve.  Plaintiff met with Bigogno, Koko, and a union representative about her unsuccessful job performance.  Neither plaintiff nor the union representative brought to the attention of Bigogno the concerns now outlined in the complaint.  On June 10, 2005, Ferbet verbally gave plaintiff the opportunity to resign.  On June 13, 2005, Bigogno, Koko, and Ferbet met with plaintiff and provided a written termination of notice for poor performance effective as of June 24, 2005.  Plaintiff's employment was terminated on June 24, 2005.

Marianne G., a white female who began work as a TSR under the FCIP at the same time as plaintiff and who is referenced in plaintiff's amended complaint, had performance problems during her mentoring period. Marianne G. never took calls without a mentor. Marianne G. had prior Federal service, and thus the procedures for her termination required a different process than the procedures for plaintiff's termination. Specifically, because Marianne G held a career-conditional appointment prior to entering the FCIP, she was put on a 90-day performance assistance plan. Marianne G. resigned her position prior to being terminated.

## Discussion

Defendant argues, and plaintiff does not dispute, that plaintiff's employment discrimination claims should be analyzed under the familiar burden-shifting scheme developed in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under the <u>McDonnell Douglas</u> framework, the initial burden rests with a plaintiff, who must establish a prima facie case of race or color discrimination by a preponderance of the evidence. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993); see also <u>Carpenter v. Con-Way Cent. Express, Inc.</u>, 481 F.3d 611, 616 (8th Cir. 2007). To do so, a plaintiff must show that "(1) [s]he is a member of a protected class, (2) [s]he was meeting his employer's legitimate job expectations, (3) [s]he suffered an adverse employment action, and (4) 'similarly situated employees outside the protected class were

7

treated differently.'" Carpenter, 481 F.3d at 616 (quoting Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005), cert. denied, 546 U.S. 1066 (2005)).

After a plaintiff has made a sufficient showing of a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1196 (8th Cir. 2006). Once such a reason is articulated, the burden of production shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a pretext for intentional discrimination. Id. At this third step, a plaintiff is obligated to present evidence that (1) creates a question of material fact as to whether a defendant's proffered reasons are pretextual and (2) creates a reasonable inference that race or color was a determinative factor in the adverse employment decision. See Stewart v. Independent Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007); Logan v. Liberty Healthcare Corp., 416 F.3d 877, 880 (8th Cir. 2005); Keathley v. Ameritech Corp., 187 F.3d 915, 922 (8th Cir. 1999).

Quarreling with the soundness of an employer's judgment in selecting one employee over another employee for termination, promotion, or other such employment action, without more, is not evidence of discrimination. Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994) (discussing business judgment in the context of a dismissal). An employer may develop

8

arbitrary, ridiculous, and even irrational policies so long as they are applied in a nondiscriminatory manner, and discrimination claims do not require or authorize a court to engage in examination of the wisdom of an employer's judgment in personnel matters. See, e.g., McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 512 (8th Cir. 1995); Smith v. Monsanto Chem. Co., 770 F.2d 719, 723 n.3 (8th Cir. 1985). Employment discrimination laws prohibit "intentional discrimination based on certain, discrete classifications; [they] do[] not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." Rose-Maston, 133 F.3d at 1109.

Evidence that similarly-situated employees were treated differently can be evidence of unlawful discrimination. To show that other employees were similarly situated, a plaintiff is "required to point to individuals who 'have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" Marquez v. Bridgestone/Firestone, Inc., 353 F.3d 1037, 1038 (8th Cir. 2004) (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)). "Employees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways," and the test is a rigorous one. Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (quotation omitted). Offering nothing more than an opinion that other employees were not treated similarly is insufficient to create a

9

genuine issue of fact for trial, and a plaintiff must substantiate her allegations with more than "speculation, conjecture, or fantasy" in order to survive summary judgment. Marquez, 353 F.3d at 1038 (quoting Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003)).

Isolated incidents, unless extremely serious, will not amount to discrimination. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1051 (8th Cir. 2002). Courts are to determine "whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (internal quotation omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

After consideration of the arguments set forth by defendant, and in light of plaintiff's failure to oppose or otherwise respond to defendant's motion, the Court finds that

10

plaintiff has not established a prima facie case of discrimination based on plaintiff's race or color.  To wit, plaintiff has not submitted any evidence regarding the allegedly intimidating comments or gestures made toward her, that Ferbet intentionally failed to move plaintiff to a new desk, or that plaintiff was treated in a rude or unprofessional manner.  Moreover, plaintiff's allegations of Ferbet's throat clearing or having to sit next to Ferbet's desk, even if supported by the record, do not rise to the level of behavior that is so objectively offensive as to alter the conditions of plaintiff's employment.  Further, plaintiff has not come forward with any evidence demonstrating that she was meeting the legitimate expectations of her employer prior to her termination.  Finally, with regard to plaintiff's averments concerning Marianne G., plaintiff fails to demonstrate sufficiently that Marianne G. dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. Accordingly, plaintiff fails to establish a prima facie case of discrimination based on race or color, and therefore fails the first prong of the McDonnell Douglas burden-shifting analysis.  On this basis alone the Court may grant summary judgment in defendant's favor.

Furthermore, even if plaintiff had established a prima case of discrimination based on her race or color, defendant has set forth nondiscriminatory reasons for plaintiff's treatment, thereby shifting the burden back to plaintiff to show that such

11

reasons are really pretexts for unlawful discrimination. Specifically, defendant has submitted evidence showing that Ferbet simply forgot about plaintiff's request to move desks, that plaintiff was terminated because she was not meeting the expectations of her employer, and that Marianne G. was allowed to stay at her employment longer than plaintiff despite poor performance because Marianne G. had prior federal service, and therefore had different employee status than plaintiff. Plaintiff has failed to submit any evidence or argument that would suggest such reasons are merely pretexts for unlawful discrimination. Rather, the evidence before the Court demonstrates that plaintiff performed below the level that was expected of her, she was on several occasions made aware of the necessity to do better, and when she did not, in time, perform at a sufficient level, her employment was terminated. Accordingly, plaintiff fails the third prong of the <u>McDonnell Douglas</u> burden-shifting analysis.

Plaintiff fails to establish a genuine issue of material fact for trial, and therefore defendant is entitled to judgment as a matter of law. For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant Michael J. Astrue, Commissioner of Social Security's motion for summary judgment [Doc. #15] is granted.

**IT IS FURTHER ORDERED** that the April 5, 2010, trial setting is hereby vacated.

Dated this __22nd__ day of February, 2010.

                                                    /s/Donald J. Stohr
                                                    UNITED STATES DISTRICT JUDGE